**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAYMOND M. ADAMS, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 05-3100 |
| DR. DOMINICK ZITO, DR. HARRIET LESTER AND RICHARD DUCHARME, | : **OPINION** |
| Defendants. | : |

**Chesler, District Judge**

Plaintiff *pro se* Raymond M. Adams, an Air Traffic Control Specialist ("ATCS") within the Federal Aviation Administration ("FAA"), has brought a *Bivens*[1] action against two FAA Flight Surgeons and a FAA Manager. Plaintiff claims damages from these defendants resulting from imposition of a substance abuse rehabilitation plan as a condition of his continued employment in violation of his constitutional rights. Defendants have filed a motion (1) to dismiss the complaint against Defendants Zito and Ducharme for failure to effect proper service; and (2) for summary judgment. For the reasons that follow, the Defendants' Motion is **GRANTED** in its entirety.

**I. FACTS**

---

[1] *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), generally held that "the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." Carlson v. Green, 466 U.S. 14, 18 (1980).

1

Plaintiff is employed as an ATCS, a safety- and security-sensitive position requiring strict medical clearance. (Zito Decl. Ex. 6 at 1.) In early 2002, plaintiff had four "conduct problems" that caused his supervisors to question his mental health, including an incident in which plaintiff entered Newark Airport illegally and threatened to cross an active runway on foot. (Zito Decl. Ex. 4 at 2.) Plaintiff does not dispute the nature of this conduct but, rather, states that "during the period of the behavioral problems exhibited by the plaintiff, the plaintiff was embroiled in a hostile divorce proceeding beginning in 2001." (Pl.'s Reply Br. at 3.) After the first of these incidents, plaintiff was given a written reprimand. (Zito Decl. Ex. 4 at 2.) On or about April 8, 2002, pursuant to FAA policies, plaintiff was placed on paid administrative leave from his duties pending a psychiatric evaluation. (Id.)

On June 11, 2002, Mario Finkelstein, M.D., examined plaintiff and diagnosed him with "alcohol dependency." (Pl.'s Reply Br. Ex. 11 at 3.) Dr. Finkelstein based his diagnosis, in part, on plaintiff's statements that his drinking had increased dramatically in the past year. Plaintiff stated that, "in the last month I have been drinking like a fish." (Zito Decl. Ex. 6 at 2.) Plaintiff further reported experiencing blackouts, dramatic increases in alcohol tolerance, and that he "begins drinking with lunch, around noon." (Id.) Plaintiff refused to answer Dr. Finkelstein's questions regarding drug use, stating, "I will not incriminate myself. I don't want to lose my job." (Id.) Dr. Finkelstein concluded that "[Plaintiff] is not fit to return to work his safety sensitive position, as an air traffic controller, at this time," and he recommended that plaintiff "be referred for alcohol and drug abuse treatment as well as psychological/psychiatric treatment." (Pl.'s Reply Br. Ex. 11 at 3.)

A substance abuse rehabilitation plan was not immediately issued to plaintiff; rather, he was permitted to continue regular sessions with his personal therapist, Joyce Hayden-Seman, MSW PhD. (Pl.'s Reply Br. Ex. 15 at 1.) In an April 1, 2003 letter to defendant Zito, the FAA Deputy Regional Flight Surgeon, Dr. Hayden-Seman wrote that "[t]he issues that caused the [behavioral] disorders to surface appear to be significantly mitigated. [Plaintiff] displays signs of improvement . . . [plaintiff] will be able to perform his air traffic duties without any impact from his mental condition." (Pl.'s Reply Br. Ex. 3.) Upon receipt of this letter, defendant Zito entered a notation in plaintiff's personnel file that he was "still not [medically] cleared." (Id.) In May 2003, the FAA referred plaintiff to its Employee Assistance Program ("EAP"). (Pl.'s Reply Br. Ex. 15 at 1.) On May 15, 2003, Bruce Schifrien, an alcohol and drug counselor, examined plaintiff (Pl.'s Reply Br. Ex. 4) but deferred making a diagnosis. (Id. at 11.)

On June 6, 2003, defendant Zito issued a substance abuse rehabilitation plan ("the Plan") to plaintiff. (Pl.'s Reply Br. Ex. 10.) Plaintiff objected to both the necessity and the scope of the Plan, which he signed on June 18, 2003. (Id. at 6.) With his signature, plaintiff wrote the following:

> "I am signing this statement and agreement under duress and I reserve all of my rights granted to me under the contract and the law. I do not agree with any part of this agreement. I believe this action is being illegally undertaken. I have attached two documents to this agreement.[2] I believe that this action is harmful to me."

---

[2] Plaintiff attached a note (Pl.'s Reply Br. Ex. 13) and summary (Id. at Ex. 7) he had previously sent to Dr. Zito. In short, these materials contained plaintiff's assertion that the Plan was being improperly imposed upon him because he had not violated DOT Order 3910.1C.

3

(Id.)  Plaintiff was required to abide by the terms of the Plan until August 5, 2003, when he received a letter from defendant Lester, a FAA Regional Flight Surgeon, notifying him that the Plan was being held in abeyance, per plaintiff's request, pending an updated medical evaluation by Dr. Finkelstein.  (Pl.'s Reply Br. Ex. 14.)  Plaintiff called Dr. Finkelstein's office to schedule an appointment and advised that he "would be bringing along his own psychologist and attorney to protect his rights."  (Pl.'s Reply Br. at 9.)  Dr. Finkelstein's office refused to schedule the re-evaluation.  (Id.)

On September 25, 2003, William Tolan, Director of EAP, received a letter from Alan Matonti, a substance abuse counselor, in which Matonti recounted his July 17, 2003 evaluation of plaintiff.  (Pl.'s Reply Br. Ex. 5.)  Pursuant to Tolan's request, Matonti indicated that "he would locate [plaintiff's] chart and get back to [Tolan]."  (Pl.'s Reply Br. Ex. 8 at 5.)  However, the FAA never received any test results or a completed evaluation.  (Pl.'s Reply Br. Ex. 15 at 1.)

In October 2003, plaintiff met with FAA medical and management personnel, including defendants Lester and Zito, to review his personnel file.  (Pl.'s Reply Br. Ex. 15 at 1.)  On November 18, 2003, defendant Lester sent a summary of plaintiff's case to Charles Chesanow, M.D. and Barton Pakull, M.D., FAA-contracted physicians.  (Pl.'s Reply Br. Ex. 15.)  On December 1, 2003, Drs. Chesanow and Pakull evaluated plaintiff and recommended to defendant Lester that plaintiff be medically cleared to return to work.  (Pl.'s Reply Br. Ex. 6 at 2.)  Later that same day, defendant Lester passed along notice of plaintiff's medical clearance to plaintiff's manager, returning plaintiff to work.  (Pl.'s Reply Br. Ex. 16.)

Plaintiff filed his Complaint on June 17, 2005. [Docket Entry No. 1.]  Plaintiff claimed:

> Defendants deprived Plaintiff of Constitutional rights by imposing a substance abuse rehabilitation program on the plaintiff without due process. The action deprived plaintiff of right to government employment without interference, his good reputation and his right to consume and/or use legal substances. Defendants deprived plaintiff to right to privacy in his own affairs.

(Complaint at 1.)

Through United Process Servers, plaintiff caused a copy of the summons and complaint, addressed to defendant Zito, to be delivered to 255 Staples Street, Farmingdale N.Y. ("255 Staples Street"). [Docket Entry No. 20.] On December 29, 2005, the Court entered an Order finding that "service upon [defendant] Ducharme . . . is insufficient under Federal Rule of Civil Procedure 4 and, therefore, the Court does not have personal jurisdiction over defendant Ducharme . . ." [Docket Entry No. 10.]

## II. DISCUSSION

Defendants move to dismiss the complaint as to Mr. Ducharme and Dr. Zito, asserting that plaintiff has failed to properly serve these defendants. All defendants move for summary judgment, asserting that (1) plaintiff has failed to identify a clearly defined constitutional right violated by the defendants, and (2) the defendants are entitled to qualified immunity. The Court will address the procedural issue first.

### A.     Personal Jurisdiction

Federal Rule of Civil Procedure 4(e) provides two methods of properly effecting service of process through delivery. See Fed. R. Civ. P. 4(e). Subsection 1 provides that service may be effected pursuant to the laws of the state in which the action is pending. See Fed. R. Civ. P. 4(e)(1). Subsection 2 of Rule 4(e) provides that a copy of the summons and complaint may be

delivered to the defendant's home or usual residence.  See Fed. R. Civ. P. 4(e)(2).  Rule 4:4-4 of the N.J. Court Rules, 1969, governs service of process in this State and is modeled after subsection 2 of the Federal Rule.  See N.J.R. 4:4-4(1).

Defendant Zito does not live at 255 Staples Street and was not living there at the time process was served at that address.  (Zito Decl. re Failure of Service.)  Therefore, the Court must dismiss all claims against defendant Zito because the Court lacks personal jurisdiction over the defendant.  Moreover, as it does not appear from the record that the failure to serve defendant Ducharme has been cured, all claims against him shall also be **DISMISSED** pursuant to Federal Rule of Civil Procedure 12(b)(5).

    **B.**    **Summary Judgment**

        **i.**    **Summary Judgment Standard**

Federal Rule of Civil Procedure 56 provides that summary judgment may be granted if the evidence submitted to the Court shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56; Hersh v. Allen Prods. Co., 789 F.2d 230, 232 (3d Cir. 1986); Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir. 1983).  Where the facts are not in dispute and the issues contested in a summary judgment motion are legal issues, the Court may decide the legal issues and rule accordingly on the summary judgment motion.  See Ingram v. County of Bucks, 144 F.3d 265, 267 (3d Cir. 1998) (when there is no genuine issue of material fact in dispute and the issue facing the court is a question of law, it can properly be resolved on summary judgment).  The existence of a "mere scintilla of evidence in support of [a] nonmovant's position will be insufficient" to withstand a summary judgment motion.  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 252 (1986).  In determining whether more than a scintilla is extant, a court must "not weigh the evidence or make credibility determinations; these tasks are left to the fact-finder." Boyle v. County of Allegheny Pa., 139 F.3d 386, 393 (3d Cir. 1998).  Thus, to survive a motion for summary judgment, the party contesting the motion must demonstrate a dispute over facts that might affect the outcome of the suit.  Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995) (citing Anderson, 477 U.S. at 248).  On a motion for summary judgment, "the inferences to be drawn from the underlying facts contained in [the moving party's] materials must be viewed in the light most favorable to the party opposing the motion."  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

Even if service upon defendant Ducharme was proper, it does not appear to the Court that plaintiff has raised any factual allegations against him.  In fact, defendant Ducharme is not mentioned at all in plaintiff's responsive papers.  Accordingly, if the Court were able to exercise personal jurisdiction over defendant Ducharme, it would grant summary judgment in favor of defendant Ducharme pursuant to Federal Rule of Civil Procedure 56.

It does not appear that plaintiff raises a material issue of fact as to his claim against Dr. Lester.  From the evidence before the Court, it appears that Dr. Lester's involvement in this matter was limited to three distinct pieces of correspondence: (1) a memorandum to plaintiff, received by him on August 5, 2003, in which Dr. Lester advised plaintiff that his rehabilitation plan was being held in abeyance, per plaintiff's request, until an updated medical evaluation was obtained (Pl.'s Reply Br. Ex. 14); (2) an objective summary of the factual history of plaintiff's

case, sent to Drs. Chesanow and Pakull on November 18, 2003 (id. at Ex. 15); and (3) an email sent to various FAA managing and medical personnel on December 1, 2003, in which Dr. Lester relayed that plaintiff had been medically cleared to return to work as an ATCS (id. at Ex. 16). Plaintiff fails to dispute any of the facts regarding Dr. Lester's involvement, and he does not produce evidence of her involvement beyond these documents. Accordingly, as plaintiff has not asserted a cognizable claim against Dr. Lester nor has he demonstrated a material issue of fact as to her liability and, therefore, summary judgment is hereby **GRANTED** as to defendant Lester.

### ii. Qualified Immunity Standard

Defendants further argue that they are entitled to qualified immunity. Under the doctrine of qualified immunity, public officials are shielded from suit if their actions were objectively reasonable and not in violation of clearly established law. Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). This affirmative defense provides "an *immunity from suit* rather than a mere defense to liability." Mitchell v. Forsyth, 472 U.S. 511, 527 (1985). The Supreme Court has opined that a "necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." Siegert v. Gilley, 500 U.S. 226, 232 (1991). The Court of Appeals for the Third Circuit has stated that ". . . if no constitutional violation is found, a court need not address whether a reasonable officer would have known he or she was violating a clearly established right. As a practical matter, the outcome will be the same whether we conclude that the officers are immune from suit or instead, that the plaintiff has no cause of action." Wright v. City of Philadelphia, 409 F.3d 595, 600 (3d Cir. 2005). Therefore, the Court will first determine whether plaintiff has articulated the

violation of a cognizable constitutional right. Specifically, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Even if service upon defendant Zito was proper, the Court would have undertaken the following analysis and found that plaintiff has failed to articulate the violation of a clearly established constitutional right.

### iii. Plaintiff's Constitutional Claims

Liberally construed, plaintiff's opposition appears to claim a violation of the Fourteenth Amendment for deprivations of (a) his property and liberty interests without due process of law and (b) his right to privacy. (Pl.'s Reply Br. at 12-13.)

#### a. Due Process

Plaintiff alleges that Dr. Zito imposed the Plan upon him in violation of his constitutional right to due process. (Pl.'s Reply Br. 6.) The Supreme Court has held that "the requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569 (1972). In the case at bar, plaintiff fails to show the deprivation of a constitutionally cognizable property or liberty interest necessary to sustain his procedural due process claim.

#### 1. Property Interest

The undisputed facts do not support plaintiff's contention that he has suffered a deprivation of a constitutionally protected property interest. The Supreme Court has categorized the procedural protection of property guaranteed by the Fourteenth Amendment as "a safeguard

of the security of interests that a person has already acquired in specific benefits." Roth, 408 U.S. at 576.  The Roth Court held further that, to have such a property interest in a benefit, "a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it." Id. at 577.  In this case, because plaintiff was not terminated, he must show that he has a property interest in the actual performance of his duties.  Plaintiff has failed to evince proof, such as a collective bargaining agreement or an employment contract, that creates an issue of material fact as to whether or not he has more than just an abstract need, desire, or unilateral expectation of the performance of his duties.  Accordingly, plaintiff cannot claim a property interest in the performance of those duties, and summary judgment on this claim is proper.

  Moreover, even if plaintiff could claim a property interest in the performance of his duties as an ATCS, the Court finds that plaintiff has failed to articulate a cognizable violation of a constitutional right to procedural due process.  FAA policy sets forth that Aviation Medical Examiners ("AMEs") shall be authorized by Flight Surgeons to conduct ATCS medical evaluations and that arrangement for professional medical services should be authorized through FAA forms.  (Zito Decl. Ex. 1 at 10.)  Dr. Zito was entitled to rely on the professional opinion of the treating physician when making the determination to issue the Plan.  See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); see also Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993) (holding that non-medical prison officials were entitled to rely on advice of treating medical professionals).  While the Court notes that Dr. Zito is a physician, unlike the Spruill or Durmer defendants, his position as a Flight Surgeon makes Dr. Zito an administrative official.  In that

capacity, he must rely on determinations of medical professionals conducting FAA-sanctioned medical examinations.

Furthermore, the Court finds that Dr. Zito reasonably relied upon Dr. Finkelstein's diagnosis. It is undisputed that plaintiff exhibited behavior in early 2002 that caused his supervisors to question his mental health. (Pl.'s Reply Br. 3; Def.'s Mem. Supp. Summ. J. 2-3.) As a result of concerns raised about his mental health, plaintiff was referred for a psychiatric evaluation – a procedure not only authorized, but mandated, by FAA Order 7210.3T.[3] Order 7210.3T specifically states that, because of the sensitive nature of the position, an ATCS "will have a medical opinion rendered on [his] ability to perform the job. This opinion would be requested when the employee's medical condition appears questionable . . ." (Zito Decl. Ex. 2 at § 2-8-9.) Here, Dr. Finkelstein's medical opinion diagnosed plaintiff with alcohol dependency. It is undisputed that, during the course of the examination, plaintiff admitted that his drinking had increased dramatically in the past year. (Zito Decl. Ex. 6 at 2.) He further admitted experiencing blackouts and increased alcohol tolerance. (Id.) Moreover, when Dr. Finkelstein inquired about plaintiff's drug use, plaintiff refused to answer because he did not want to "incriminate [him]self" and did not "want to lose [his] job." (Id.) Dr. Finkelstein's diagnosis was certainly sufficient to implicate the Drug and Alcohol-Free Departmental Workplace policy of the Department of Transportation ("DOT Order 3910.1C"), which states that a "rehabilitation

---

[3] Plaintiff contends the medical referral was illegal because he can be tested for drugs or alcohol only for a violation, or suspected violation, of DOT Order 3910.1C. (Pl.'s Reply Br. 11; Id. at Ex. 1.) However, plaintiff was not referred for substance abuse testing, which is governed by DOT Order 3910.1C; he was referred for a psychiatric evaluation. (Zito Decl. Ex. 4.) Medical evaluations are, as defendants contend, authorized and governed by Aerospace Medicine Order 3930.3A. (Pl.'s Reply Br. Ex. 2.)

program shall focus on employees within the Department whose duties include safety- and security-sensitive functions, and who are in need of assistance in resolving problems with the use of drugs and alcohol." (Pl.'s Reply Br. Ex. 1 at § VII-1.)  It was this diagnosis (and not some prior, unfounded, suspicion of substance abuse, as plaintiff alleges) that prompted Dr. Zito to prescribe the Plan.  Therefore, the Court finds that Dr. Zito did not violate plaintiff's constitutional right to procedural due process when, upon Dr. Finkelstein's recommendation, he issued the Plan to plaintiff.  Indeed, defendant Zito provided plaintiff with process beyond that which was due when he allowed plaintiff to continue therapy instead of immediately submitting to the Plan.  (Pl.'s Reply Br. Ex. 15 at 1.)  It was only when plaintiff began to seek reinstatement of his medical clearance in the absence of a second medical opinion that defendant Zito presented plaintiff with the Plan.  (Id.)

Plaintiff alleges that Dr. Zito violated a constitutional right of plaintiff's when he insisted upon rehabilitation in the face of "three professionals stating that there was no substance abuse problem."  (Pl.'s Reply Br. 6.)  The Court finds that Dr. Zito's refusal to acknowledge these other opinions was appropriate and not in violation of plaintiff's constitutional rights.[4]  Plaintiff is employed in a highly sensitive and important position.  FAA policy requires that every ATCS must be medically cleared for duty. (Zito Decl. Ex. 2 at § 2-8-9.)  Dr. Finkelstein, a medical

---

[4] It is undisputed that none of these professionals is a medical doctor.  (See Pl.'s Reply Br.; Def,'s Reply Br. 4.)   Defendant Zito asserts that he could not reinstate plaintiff's medical clearance until a "qualified professional" issued a "credible determination" of plaintiff's stable mental health.  (Def.'s Reply Br. 4.)  Defendant's assertion is supported by FAA policy (Zito Decl. Ex. 2 at § 2-8-1) and is not disputed by plaintiff.  The evidence before the Court is insufficient to draw a conclusion as to these professionals' qualifications.  The Court also notes that, notwithstanding the professionals' credentials, none of the opinions constituted an unqualified endorsement of plaintiff's mental health.

doctor, rendered an opinion which caused Dr. Zito to revoke plaintiff's medical clearance.  Until Dr. Finkelstein or another qualified professional found otherwise, Dr. Zito could not medically clear plaintiff to return to work as an ATCS.

Plaintiff's responsive papers indicate he is of the opinion that reinstatement of his medical clearance was warranted by virtue of his attending therapy because his therapy sessions were acceptable to the FAA.  According to FAA policy, however, medical clearance can only be obtained through evaluation by qualified medical personnel.  (Pl.'s Reply Br. Ex. 2 at ¶ 54.)  Whether plaintiff's course of treatment included therapy or a substance abuse rehabilitation plan, a prerequisite step in plaintiff's return to work as an air traffic controller must be a FAA-sanctioned medical evaluation.  (Id.)  None of the subsequent opinions plaintiff offered to Dr. Zito as proof of his good mental health was issued by a medical doctor.

In this instance, Dr. Zito was under no obligation to reconsider his decision to issue plaintiff the Plan until presented with a second opinion by a qualified professional.  When plaintiff finally obtained such an opinion from Drs. Chesanow and Pakull, plaintiff's medical clearance was reinstated that same day and he was returned to work.  As he was afforded all the process due to him, plaintiff has failed to articulate a cognizable constitutional right of due process violated by Dr. Zito.

To the extent that Dr. Lester's involvement can be considered material, it appears as if she did nothing but work to ensure that due process was afforded to plaintiff.  First, Dr. Lester suspended implementation of the Plan, at plaintiff's request.  (Pl.'s Reply Br. Ex. 14.)  Second, after plaintiff and Dr. Finkelstein could not, for whatever reason, schedule a second evaluation, Dr. Lester contacted two other, qualified, physicians.  (Id. at Ex. 15.)  She provided those doctors

with a detailed history of plaintiff's situation, facilitating the examination which medically cleared plaintiff.  (Id.)  Third, Dr. Lester notified FAA personnel that plaintiff was cleared to return to his position as an ATCS.  (Id. at Ex. 16.)  The Court finds no construction of these events that gives rise to a legal claim by plaintiff against Dr. Lester.

### 2.  Liberty Interest

Plaintiff alleges further that defendant Zito infringed upon a liberty interest of plaintiff's when he "branded the plaintiff and [sic] alcoholic." (Pl.'s Reply Br. 12.)  A right to general employment, not specific employment, is protected by the Due Process Clause; "[i]t is the right to pursue a calling or occupation, and not the right to a specific job that is protected by the 14th Amendment." Piecknick v. Pennsylvania, 36 F.3d 1250, 1259 (3d Cir. 1994).  The Roth Court stated "where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard is essential." 408 U.S. at 573 (citations and internal quotation marks omitted).

To establish the deprivation of a protected liberty interest in future employment, the plaintiff must show: (1) the defendant's actions "imposed upon [him] a stigma or other disability that foreclosed [his] freedom to take advantage of other employment opportunities" and which "might seriously damage his standing and associations in the community." Roth, 408 U.S. at 573; Ersek v. Twp. of Springfield, 102 F.3d 79, 84 (3d Cir. 1996); (2) that the defendant publicly disseminated the stigmatizing information to outsiders.  Codd v. Velger, 429 U.S. 624, 627-29 (1977); Bishop v. Wood, 426 U.S. 341, 348-49 (1976); Cooley v. Pa. Hous. Fin. Agency, 830 F.2d 469, 473-74 (3d Cir. 1987); Chabal v. Reagan, 841 F.2d 1216, 1244 (3d Cir. 1988); and (3) that the published information was substantially and materially false or misleading.  Codd, 429

U.S. at 627-29; Eserk, 102 F.3d at 83-84; Fraternal Order of Police Lodge No. 5 v. Tucker, 868 F.2d 74, 82 (3d Cir. 1989).

The remark that plaintiff attributes to defendant Zito, that plaintiff's divorce was due to alcoholism (Pl.'s Reply Br. Ex. 12), is insufficient to implicate plaintiff's constitutional liberty interest. The Court will assume that being known as an alcoholic is sufficiently stigmatizing to satisfy the first element of the Roth criteria. However, the record contains no evidence of dissemination. For that reason, the Court grants summary judgment as to this claim. The Court further notes that plaintiff must produce evidence showing the stigmatizing information to be false. Indeed, the record evidence contains plaintiff's statements to Dr. Finkelstein that his drinking had increased dramatically in the previous year, he had been "drinking like a fish," and that plaintiff experienced blackouts and a higher alcohol tolerance. (Zito Decl. Ex. 6 at 2.) For these reasons, plaintiff cannot sustain a cause of action for infringement upon his liberty interest against any of the defendants.

Moreover, even if being placed on paid administrative leave could be seen to implicate plaintiff's liberty interest, the Court finds the defendants' conduct reasonable under the circumstances. Whether plaintiff's conduct problems resulted from the stress of his divorce or from alcoholism, plaintiff's conduct warranted disciplinary action. The Court takes judicial notice of the especially sensitive nature of plaintiff's job. Plaintiff's supervisor provided him with notice in the form of written reprimands issued in response to his conduct problems. (Pl.'s Reply Br. at 3.) Therefore, defendants followed an appropriate course of action by placing plaintiff on paid administrative leave. Thus, even if plaintiff could sustain a cause of action for

infringement upon his liberty interest, the Court finds that plaintiff's claims are barred by qualified immunity.[5]

### b. Right to Privacy

Based on plaintiff's responsive papers, it appears to the Court that plaintiff is alleging that the provision of the Plan containing the lifelong proscription from all alcohol and products containing alcohol[6] violates his constitutional right to privacy. The Court is satisfied that there has been no such violation.

Plaintiff's claim that he, as "an adult over the age of 21," (Pl.'s Reply Br. 12) has a constitutionally protected right to consume products containing alcohol, is not supported by constitutional jurisprudence. A constitutionally protected right is a "basic liberty guaranteed by the Constitution or Bill of Rights." Black's Law Dictionary 250 (abridged 7th ed. 2000). Plaintiff has not provided this Court with any precedent establishing that he has a constitutional right to consume alcohol that was known by defendants at the time of the alleged violation. For this reason, the Court finds that plaintiff has failed to identify a clearly established constitutional

---

[5] The Court has considered plaintiff's July 5, 2006 submission appending a favorable labor arbitration decision. [Docket Entry No. 22.] The Court has reviewed plaintiff's submission and determined that it does not change the analysis. While the arbitrator mentions "due process," it does not appear that he applied the constitutional standards by which this Court is bound. Moreover, to the extent plaintiff argues defendants' actions denied him a constitutionally protected liberty interest, the arbitration proceeding and outcome appears to have satisfied any name-clearing process to which plaintiff argues he was entitled. For these reasons, the July 5, 2006 submission does not affect the Court's ruling.

[6] The content of such substance abuse rehabilitation and treatment plans is determined by FAA medical personnel. (Pl.'s Reply Br. Ex. 1 at VII-1.) However, the Court questions whether the absolute proscription placed upon plaintiff, that he "must totally abstain at all times, on and off duty, from the use of ANY alcohol, of products containing alcohol [sic] including prescription or over-the-counter medications and other products, such as mouthwash" (Pl.'s Reply Br. Ex. 10 at 3) is unnecessarily restrictive.

right violated by defendants. Even if plaintiff had identified such a violation, the Court finds defendants qualifiedly immune as a matter of law.

### iv. Additional Claim

Plaintiff's responsive papers introduce an additional claim: that defendant Zito's comment, that plaintiff's divorce was a result of his alcoholism, amounts to defamation. (Pl.'s Reply Br. 7; Id. at Ex. 12.) Because the Court has dismissed all of plaintiff's federal claims, it need not analyze the merits of this additional state law claim because the Court declines to exercise supplemental jurisdiction over this remaining state law claim. See United Mines Workers of America v. Gibbs, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); Broderick v. Associated Hosp. Serv., 536 F.2d 1, 8 n. 25 (3d Cir. 1976); Caputo v. Fauver, 800 F.Supp. 168, 172 (D.N.J. 1992), aff'd 995 F.2d 216 (3d Cir. 1993). Accordingly, any state law claims for defamation are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

## III. CONCLUSION

For these reasons, defendants' motion is **GRANTED** and all constitutional claims against Defendants Zito and Ducharme are **DISMISSED** for insufficient service of process; Summary judgment is **GRANTED** as to Defendant Lester; and plaintiff's remaining state law claims are **DISMISSED WITHOUT PREJUDICE**. An appropriate Order will follow.

Dated: August 16, 2006

/s/ Stanley R. Chesler
United States District Judge